**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL CIMINO** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No. 14-3461** |
| **v.** | : | |
| | : | |
| **AS SEEN ON TV, INC.,** | : | |
| **STEVEN A. ROGAI,** | : | |
| **and RONALD C. PRUETT, JR.** | : | |
| **Defendants.** | : | |

**MCHUGH, J.**                                                        **MARCH 16, 2015**

**MEMORANDUM**

This case concerns a dispute between a company and a former member of its board over agreements related to stocks and stock options.  Plaintiff, a former member of the board, has cast this dispute as not only a breach of contract action, but also as tortious interference with contract and securities fraud.  The company has filed a motion to dismiss which I will grant in part.

I.       **Parties**

Plaintiff, Michael Cimino, is a citizen of Pennsylvania.  He was a member of the board of As Seen on TV ("ASTV") until he resigned on March 23, 2011.  Complaint ¶ 37.

Defendant ASTV is a corporation organized under the laws of the state of Florida.  *Id.* at ¶ 2.  Its principal place of business is also in Florida.  *Id.*  ASTV had other names before it changed its name to As Seen on TV on September 19, 2011, but for the purposes of this memorandum I will refer to it as ASTV.

Defendant Steven A. Rogai was President, CEO, and a Director of ASTV until he resigned on March 13, 2013.  *Id.* at ¶ 6.

Defendant Ronald C. Pruett succeeded Rogai as President, CEO, and Director.  *Id.* at ¶ 7.

1

## II.      Factual Background

1.  Plaintiff's Resignation from As Seen on TV

On May 26, 2010, the Board of Directors of ASTV approved an option agreement (the "Option Agreement") awarding Cimino the right to purchase five million shares of ASTV's common stock at $.075 per share.  Complaint ¶ 34; Pl.'s Ex. A.  The agreement specified that the right to purchase these shares would vest according to a specific schedule or, if ASTV terminated Cimino without cause, immediately upon termination.  Pl.'s Ex. A.  Crucially, the option agreement specified the methods by which the option agreement could be exercised:

> 4.  Method of Exercise.  The options shall be exercised by written notice to the Corporation's Stock Option Administrator at the Corporation's principal place of business.  The notice shall set forth the number of shares to be acquired and shall contain payment by either: (i) in cash or check, (ii) to the extent permitted by applicable law, by means of any cash or cashless exercise procedure through an arrangement approved by the Administrator…"

*Id.*

Cimino resigned less than a year later.  On March 23, 2011, ASTV's Board of Directors approved a new agreement (the "Resignation Agreement").  Pl.'s Ex. C.  Under this contract, Cimino agreed to resign from ASTV.  ASTV agreed that "all optioned shares held by Mr. Cimino on the date prior to execution shall fully vest."  *Id.*  ASTV's chairman, Kevin Harrington, promised to "personally deliver one and one half million (1,500,000) shares to Mr. Cimino."  *Id.*  ASTV promised to deliver another one million shares to Plaintiff.  *Id.*  The agreement also provided a certain period within which Cimino would not "offer, sell, contract to sell, hypothecate, pledge or otherwise dispose" of any shares of common stock.  *Id.*

At this point, two distinct disputes arose with respect to Plaintiff's rights to ASTV shares under the agreements.  One of these disputes centers on ASTV's refusal to remove a "Rule 144 Legend" from the shares Kevin Harrington delivered to Plaintiff.  The Legend severely limits

Plaintiff's ability to sell the shares he received from Harrington.  The second dispute arises from ASTV's refusal to permit Plaintiff to exercise his option to purchase ASTV stocks through a "cashless exercise."  Both disputes emerged more or less simultaneously, but for clarity I will summarize them separately.

2.   Cashless Exercise of Stock Options

On March 29, 2011, only a few days after ASTV approved the resignation agreement, Cimino contacted Rogai in order to exercise his right to acquire ASTV stock in a cashless exercise.[1]  Complaint ¶ 49.  Rogai refused, and Defendants have refused numerous subsequent requests to allow Plaintiff to conduct a cashless exercise of his options.  *Id.* at ¶¶ 50–51.  Around this time, Rogai told Cimino that he, Rogai, would "make sure that [Cimino] never [got] another share from the company." *Id.* at ¶ 50.  Cimino asserts that ASTV, in its agreements with Plaintiff, promised to allow him to make a cashless exercise but never intended to carry through with that promise.

3.   The Legend of Kevin Harrington's Stocks

Kevin Harrington delivered one and one half million shares to Cimino as required by the Resignation Agreement.  Complaint ¶ 47.  All of these came encumbered with a Rule 144 Legend.  *Id.*  A Rule 144 Legend restricts the stockholder's rights to sell the stock.  It can be removed, but usually removal requires a legal opinion letter, and in most circumstances that letter comes from the counsel of the company to which a stock relates.  At Plaintiff's request, Defendants removed the Legend from 120,083 of the shares from Harrington.  *Id.*  Six months after receiving the stocks from Harrington, Cimino requested from ASTV a letter authorizing

---

[1] In this particular cashless exercise, Cimino would buy 5 million shares at $0.075/share, and in order to pay the $375,000 for these shares he would sell 487,013 of those shares back to ASTV at the closing price on March, 29, 2011 of $0.77. In other words, ASTV would loan 487,013 shares to Cimino so that they could be sold back to ASTV, and the proceeds would be used to pay ASTV for a net issuance of 4,512,987 shares to Cimino.

removal of the Legends from the remaining shares.  *Id.* at ¶ 58.  Defendants refused that request

and have refused additional subsequent requests.  *Id.*

    4.  The Lawsuit

Plaintiff Cimino filed a Complaint in this Court on June 12, 2014.  The Parties stipulated

to the withdrawal of several of Plaintiff's claims.  The remaining claims allege:

    1.  (Count IV) Breach of Contract and Covenant of Good Faith and Fair Dealing against ASTV;

    2.  (Count V) Tortious Interference with Contract against Pruett; and

    3.  (Count VI) Violation of Section 10(b) and Rule 10b-5 against ASTV and Rogai.

Defendants filed a motion to dismiss all three of Plaintiff's claims pursuant to Fed. R. of

Civ. P. 12(b)(6).

**III.    Standard of Review**

The standard of review for district courts deciding motions to dismiss under Fed. R. Civ.

P. 12(b)(6) is familiar:

> [D]istrict courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.*  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  In other words, only if a

plaintiff has failed to allege a set of facts that would support a plausible claim for relief should a

district court grant a motion to dismiss.

**IV.    Discussion**[2]

1.  Breach of Contract and Covenant of Good Faith and Fair Dealing against ASTV.

Plaintiff alleges Defendant ASTV breached its agreements with him in two distinct

respects.  Plaintiff alleges that ASTV's refusals to (a) remove the Rule 144 Legend from stocks

Plaintiff received from Harrington and (b) permit Plaintiff to conduct a cashless exercise of

options received from ASTV each breach Plaintiff's agreements with ASTV.  Plaintiff also

alleges that Defendant's refusals violate the duty of good faith and fair dealing that is part of

these agreements.  Complaint ¶¶ 126–27.

I find that Plaintiff has alleged sufficient facts in his Complaint to survive this Motion to

Dismiss.  In Pennsylvania, "To show a breach of contract, a party must establish: (1) the

existence of a contract, including its essential terms, (2) a breach of a duty imposed by the

contract, and (3) resultant damages.  When performance of a duty under a contract is due, any

nonperformance is a breach." *McCausland v. Wagner*, 78 A.3d 1093, 1101 (Pa. Super. Ct. 2013)

(citations omitted).  The elements of breach of contract in Florida are the same: "(1) the

existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach."

*Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006).

Defendants challenge Plaintiff's breach of contract/breach of covenant of good faith and

fair dealing claim on the grounds that "Plaintiff does not reference the actual contractual

language upon which his breach of contract claim is based."  Defendants' Memorandum in

Support of their Motion to Dismiss 17.  Defendants characterize the claim as based on two

alleged contractual breaches: a breach of Plaintiff's right to a cashless exercise of options; and a

---

[2] Two of Plaintiff's claims are based on state law causes of action.  For purposes of resolving the present motion to dismiss, there appear to be no differences in the laws of Pennsylvania and Florida that would affect the outcome. *See Specialty Servs. Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 233 (3d Cir. 2010) .

breach of Plaintiff's right to have Rule 144 Legends removed from shares he owned.  According

to Defendants, Plaintiff fails to identify contractual provisions that give him these rights,

because, they argue, the relevant contracts do not in fact give Plaintiffs such rights.

     I am satisfied that Plaintiff has sufficiently identified contractual duties that were

allegedly breached, and adequately pleaded that Defendants acted arbitrarily and without good

faith exercising in discretion afforded to them under the contract.  Complaint ¶ 127.  This is

enough to survive this motion to dismiss.

     2.  Tortious Interference with Contract against Pruett

     In this claim, Plaintiff alleges Pruett tortiously interfered with Plaintiff's contracts with

ASTV.  According to Plaintiff, Pruett "caused and/or directed Defendant ASTV not to remove

the Rule 144 Legend on Plaintiff's shares and not to process the cashless exercise of Plaintiff's

options, despite ASTV's contractual obligations to do so."  Complaint ¶ 135.

     Defendants make several challenges to the sufficiency of Plaintiff's tortious interference

claim against Pruett.  Defendants contend the pleading contains inadequate factual allegations to

support the claim.  They also argue that a critical fact Plaintiff does allege—that Pruett was a

corporate officer of ASTV at the time he took the purportedly tortious actions—makes it

impossible for Pruett to be liable for tortious interference.

     I agree with Defendants that Pruett cannot be liable for tortious interference under the

facts currently alleged in the Complaint.  Under Pennsylvania law:

> [t]o set forth a legally sufficient cause of action for intentional interference with
> contractual or prospective contractual relations, four elements must be pled:
> (1) the existence of a contractual, or prospective contractual relation between the
> complainant and a third party;
> (2) purposeful action on the part of the defendant, specifically intended to harm
> the existing relation, or to prevent a prospective relation from occurring;
> (3) the absence of privilege or justification on the part of the defendant; and
> (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Pawlowski v. Smorto*, 588 A.2d 36, 39–40 (Pa. Super. Ct. 1991); *CBG Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 384 (3d Cir. 2004).  Florida law is not different in any relevant respect.  *See  Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 385–86 (Fla. Dist. Ct. App. 1999).

 An indispensable component of a claim of tortious interference is the requirement that the contract at issue must be between the claimant and a third party:  "The tort of interference with contract is defined in terms of unprivileged interference with a contract with a third party. Essential to the right of recovery on this theory is the existence of a contractual relationship between the plaintiff and a party other than the defendant."  *Nix v. Temple University of Com. System of Higher Educ.*, 596 A.2d 1132, 1137 (Pa. Super. Ct. 1991); *See also Salit*, 742 So. 2d at 386 ("For the interference to be unjustified, the interfering defendant must be a third party, a stranger to the business relationship."); *Emerson Radio Corp. v. Orion Sales, Inc.,* 253 F.3d 159, 173 (3d Cir. 2001) (applying New Jersey law) ("A cause of action for tortious interference with contract cannot be directed against a defendant who is a party to the contract.").

 A corporation therefore cannot tortiously interfere with a contract to which it is a party. As a general matter, a corporation's officers are not third parties to the corporation's contracts. *Id.*  As the Court of Appeals formulated the rule:  "Because a corporation acts only through its agents and officers, such agents or officers cannot be regarded as third parties when they are acting in their official capacities."  *Emerson Radio Corp.*, 253 F.3d at 173.  A corporate officer, director, trustee, or management level agent may only qualify as a third party if her "sole motive in causing the corporation to breach a contract is actual malice directed toward the plaintiff, or the individual's conduct is against the interest of the corporation." *Avins v. Moll,* 610 F. Supp. 308, 318 (E. D. Pa. 1984); *Salit*, 742 So. 2d at 386 ("the 'privilege to interfere' enjoyed by an

officer or employee …. is destroyed where an employee acts solely with ulterior purposes, without an honest belief that his actions would benefit his employer.").

Plaintiff has not alleged facts that would show Pruett was acting as a third party when he caused ASTV to breach contractual obligations.  It is true that corporate officers are personally liable for their intentionally tortious conduct, but Plaintiff has not sufficiently pleaded that Pruett was acting outside his capacity as a corporate officer.  To the extent that Pruett was acting consistently with the interest of the corporation, and exercising authority on its behalf, he cannot be deemed a third party interfering with the contract.

Because Plaintiff has not alleged facts to show Pruett was an outsider meddling in the contract between Plaintiff and Pruett's company, this claim will be dismissed without prejudice.

3.   Violation of Section 10(b) and Rule 10b-5 against ASTV and Rogai

Mr. Cimino's final claim alleges a violation of a federal securities statute and regulation. Section 10(b) of the Securities Exchange Act and Rule 10b-5 provide a private right of action for plaintiffs to recover for false or misleading statements or omissions of material fact in connection with the sale of a security. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5(b).  According to Plaintiff, ASTV promised, through the Options Agreement and Resignation Agreement, to remove the Rule 144 Legends from Plaintiff's shares and allow Plaintiff to conduct a cashless exercise of his options.  Plaintiff further claims that ASTV had no intention of ever keeping these promises. Plaintiff points to conversations with Rogai that took place around March 29, 2011 in which Rogai informed Plaintiff that Rogai would "make sure that he [Cimino] never get[s] another share from this company" as evidence that Defendants made their promises with no intention of keeping them.  Complaint ¶ 50.  According to Plaintiff, these facts give rise to a claim that Defendants made fraudulent statements in connection the sale of securities.

The elements of an action under Section 10(b) are that the defendant: "(1) made misstatements or omissions of material fact; (2) with *scienter*; (3) in connection with the purchase or sale of securities; (4) upon which [the plaintiff] relied; and (5) that [the plaintiff's] reliance was the proximate cause of its injury." *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 871 (3d Cir. 2000).  A claim alleging a violation of these rules is a claim of fraud, and like other fraud claims, violations of 10(b) must be plead with particularity as to the exact misleading statement and the facts that lead to the "strong inference" of state of mind.  *See* 15 U.S.C. §78u-4.

Federal law imposes a statute of limitations on securities fraud claims such as this one. The statute of limitations for claims of "fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws … may be brought not later than the earlier of (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation."  28 U.S.C. § 1658; *Alaska Elec. Pension Fund v. Pharmacia Corp.*, 554 F.3d 342, 346 (3d Cir. 2009).

Defendants assert that the statute has run because Plaintiff must have discovered the facts constituting the alleged violation no later than March of 2011, when Rogai informed Plaintiff that he would "never get another share from the company."  Defendants' Memorandum in Support of their Motion to Dismiss 20–21.  The statute of limitations must have begun to run at that point, according to Defendants, and elapsed long before Plaintiff filed his lawsuit in 2014. Plaintiff replies that Defendants are continuing to violate his rights by refusing to remove the Rule 144 Legend or permit a cashless exercise of his options, and therefore the statute of limitations does not apply.

Plaintiff's argument is unpersuasive.  The statute of limitations for securities fraud claims begins to run when a plaintiff "in the exercise of reasonable diligence, should have known of the basis for [his] claim."  *Pharmacia Corp.*, 554 F.3d at 347.  Here, Plaintiff concedes that he actually knew of the alleged fraud by March 2011.  Plaintiff's argument that Defendants continue to violate his rights by refusing to uphold promises they made to Plaintiff may be relevant to his breach of contract claim, but it does not save his securities fraud claim.

Because this claim will be dismissed with prejudice as untimely, I will not address the Parties' other arguments about the merits of the claim.

**V.     Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss will be granted in part and denied in part.  Plaintiff's breach of contract claim will not be dismissed.  Plaintiff's claim for tortious interference will be dismissed without prejudice.  Plaintiff's Section 10(b) and Rule 10b-5 claim will be dismissed with prejudice.  An appropriate order follows.

_____    /s/ Gerald Austin McHugh
United States District Court Judge

10